Good morning, your honors. I'm sorry. Good morning. Good morning, counsel. Michael Self, please, the court, on behalf of Mr. Escobar-Cuellar, who is actually present here. Okay. If you can't speak up, you've got a little quiet voice. I may be a little nervous. My voice will definitely get stronger. Not a problem. I'd like to reserve. You're being streamed to the whole world. We want to be sure they can hear you. That'll soothe your nerves. I'd like to reserve two or three minutes for the rebuttal. Okay. I'll try to help you on that. Thank you, your honor. Your honor, realizing that I am arguing against case law, all the case law aptly pointed out by the government, I just believe that, well, the issue here is this phrase, one year or longer, and whether this phrase should be read together as one year or longer, indicating a minimum sentence of one year or anything above that, or if this can apply to a maximum sentence and a misdemeanor. Counsel, as you pointed out, in each aspect that you have raised, one of our cases says you're wrong. Yes. We're a three-judge panel. We can't overrule one of our cases, can we? Aren't we bound by our case law? Absent Supreme Court law to the contrary or a non-bound court that changes our law? Well, yes, your honor. That's why I start off with that, yes, I am arguing for a change in the law. So how can we help you? Since we don't have authority to do that, are you asking, basically you're saying I'd like you as a panel to ask the court, sua sponte, to hold an en banc hearing and change these, what is it, four cases? Well. That you'd have to overcome in order to be successful? Right, so. That's never happened before with four cases. It's almost astronomical. With one case, maybe four cases, tough. I understand the emotionally, as a person, I understand the position. I'm just trying to be realistic with you as to what we can do as a three-judge panel in this court. Every single one of your arguments is met with a case on our court that says, no, that's wrong. So I'm asking, what do we do? Your honor, today I was just expecting to make my points. Sure, please do. You've done that in your brief, of course, but if you want to make it again, by all means do so. Maybe a little clearer here. But, your honor, actually. Let me ask you this, counsel. With regard to cancellation of removal, I just want to be clear. He pled to a felony offense, right? Originally. Did he ever make a motion for the court under 17B to reduce it to a misdemeanor? I was just going to say that before you asked me the question, your honor. There is a recent change. I did make a motion to the court. And I have copies of the transcript wherein the superior court did reduce it to a misdemeanor. You mean outside of the record that's been submitted to us? Outside of the record, yes, your honor. Because this just occurred on April 22nd. So, this is not in the record. But it was declared a misdemeanor. So, at this point, I don't even know that I have standing to make this argument. Because in California, a misdemeanor can only be sentenced to 364 days. And his crime was declared to be a misdemeanor. So, the argument that I came here to make, I may not have standing to make in this case. So, tell me specifically then, you went, I mean, this was earlier reduced to a misdemeanor, right? It had not been declared by the court by a motion and a clear declaration of the court. My argument in my brief was simply that under 17b-3, it was under the law, which was the argument I made to the superior court, and they so declared it. But help me with this. As I understand it, the sentence was suspended. And under 17b-1, when a sentence is suspended, it does not mean that it's not a felony. It's just suspended. So, you're telling me now that you've gone to the court, superior court, and gotten the suspended sentence. I don't know what you did with that. But basically, the entire record, his pleading that he committed a felony, and the crime in which he was charged has been changed to a misdemeanor? Yes. How did that happen? Under 17b, Your Honor. Because presumably he finished probation, he's done, and so you made a motion in state court and it was granted. Yes. Because the sentence was 180 days and not a year or more, so it was not a felony. It was not a year or longer. It was under a year. And so the court looked at this and said, okay, under these circumstances, 17b allows us to declare this a misdemeanor for all purposes. So it's a misdemeanor. So the official record of the State of California is he was convicted of a misdemeanor? Yes. Do you have a certified copy of that? I have. I do, Your Honor. And I have three, if I need. Can I give it to the court? Yes. I'm sorry. Let me give one to the government. Thank you. Since this is an official document, purportedly, we will take this as your motion for us to take judicial notice and we'll decide later whether we do it, but we'll at least have it. All right, so let's assume that we take judicial notice and now it's instead of the 489 felony grand theft, it's now a misdemeanor offense. Why doesn't it still satisfy the one year or longer criterion? Well, the recent change in California law, Penal Code 18.5, has declared that misdemeanors are punishable by a maximum penalty of 364 days. So there's no longer a one year maximum sentence for a misdemeanor in California. How do we treat subsequent changes in the law? If we allowed a state to change the law after the fact insofar as immigration is concerned, we'd have to open up thousands of cases, wouldn't we? Because we treat the law as being what it is at the time that it's being considered. Right? At the time of the original offense, Your Honor? At the time that it was adjudicated before the IJ. Well, Your Honor, I've brought motions before IJs and other cases because of this new change in California law. But it's still ongoing then. I'm just saying here you have a case that was adjudicated by the IJ, goes to the BIA, and the California law says X. You're saying that sometime thereafter it was changed to say Y. Is it your position that you have to go back and open it up because of the change in the law? That the change is retroactive and applies to all misdemeanors. The 18.5, this is the problem with the way this is coming up. Right? You went to state court and you got a reduction to a misdemeanor. We didn't get notification of that. I'm not sure if the government got a heads up. Now you're relying on 18.5, changing the misdemeanor penalties. We didn't get notice of that. Retroactivity isn't briefed. So it's an odd way to bring up new issues when you're appearing before the court for argument. But setting that aside, is 18.5 a variant of penal code section 19 where it says essentially accept as provided for by the provision? Or is it every single misdemeanor in California are now punishable by 364 days? Because some of them are punishable by six months, for example. Yes. Do you have the exact language of 18.5 that you can read to me? I don't have it. But the language is that the maximum sentence for a misdemeanor is 364 days. Well, that was true as of the new law. But as my colleague points out, there's no briefing on retroactivity. Does that mean that someone who was convicted of a 365 days in jail and it qualified as a felony and they've been out for 10 years, does that mean they can go back now and say, I was never convicted of a felony? If they were convicted of a misdemeanor and given a 300 days, just to understand you, Your Honor. In this case, he was convicted of a felony. You're saying it was really a misdemeanor because he didn't spend more than a year in jail. Even though he pled to grand theft, which was a CIMT, and it was for one year or longer at the time. You're saying that the law changed retroactively. I'm asking you, does that mean anybody who was similarly convicted could then say they were no longer, you know, basically they weren't sentenced to 365 days or longer? Your Honor, if you're giving us an example of someone who was sentenced to a year, that person sentenced under a felony to a year is probably not eligible to go back and ask the court to have it declared under 17B to be a misdemeanor. Well, yours was so sentenced, but it was suspended, right? He was originally sentenced to a crime of one year or longer, but the sentence was suspended, right? Well, he was never sentenced to one year. He was convicted of a felony offense. He was convicted of an offense that called for incarceration of one year and longer. It wasn't imposed. Potentially could be punished by more than a year. Right. But the fact that it was suspended and not imposed, at least under the current law, doesn't change that, right? That's what we were talking about to start with. Well, he had a sentence imposed of 180 days. I understand. Do you want to save some of your time? You've got about three and a half minutes. Up to you. I just have one follow-up. Real briefly, just so I understand. You're saying the California Penal Code, 18.5, changes the punishment for misdemeanors? All misdemeanors? All misdemeanors. Every misdemeanor is now? It sets out a maximum punishment for a misdemeanor. Okay. So even the offense for which he was convicted originally would now be, if treated as a misdemeanor, would be? 364. Thank you. As I understand it, that section was enacted for the very purpose you're talking about, right? Exactly. Because of immigration law issues. Yes, it was. Okay. So, Your Honor, I haven't made any of my points regarding one year or longer, but they have to do with English usage. They have to do with a comparison to the way the Act uses very similar language. The only other place that the Act uses that similar language is in defining aggravated felonies, where they use the term at least one year. This is all in your brief, though, right? Not exactly, Your Honor. Okay. Or under Section 101A43J, they use the phrase one year imprisonment or more, which is almost identical to one year or longer. And this is all intended to mean a time where a minimum sentence of one year is imposed, not where a maximum sentence of one year is imposed. Let me ask you this, since you want to stay up here. Assuming for a moment that we even get to this, did your client establish a likelihood of future persecution for purposes of his withholding a removal claim? Your Honor, I don't think I'm prepared right now. Okay. Well, why don't you sit down? Reserve that and I'll come back and answer that question. Thank you. Good morning. Good morning. May it please the Court. My name is Jan Redburn, and I'm appearing on behalf of Respondent and the Attorney General. Your Honors, as the Court has recognized, every point the Petitioner has made in his brief has been foreclosed by this Court's decisions. And barring reversal of those decisions, the government's position is that he hasn't met his burden of establishing any relief or removal. Can I ask you this? The counsel has now, of course, referred to the 18.5 and the change. We have no briefing on retroactivity and so on, but what is the government's position? I'm sure you're familiar with that statute since it's, I'm sure, coming up frequently. In this case, does it make any difference even if it were retroactive? I'm sorry. It does not make any difference because he had to establish that he was statutorily eligible for cancellation of removal under both 1182 and 1227A2. And 1227A2 talks about he can't be convicted of an offense for which a sentence of one year or longer may be imposed, not that was imposed. So the fact that he still remains ineligible because he could have been sentenced for one year or longer, two or three years in this case. So it really doesn't make any difference. As far as his argument that his offense has been reduced to a misdemeanor, this is the first that I've heard of this. It's not in his brief, as the Court has recognized.  But certainly the agency never had an opportunity to consider this new evidence. And I'd also point out respectfully that the Court's review here is limited to the record of proceedings before the agency and the arguments that are made in Petitioner's brief and Respondent's brief. So Petitioner, despite the fact that he now claims his offense has been reduced to a misdemeanor, he failed to establish that he's statutorily eligible for cancellation removal because he's been convicted of a crime involving moral turpitude for which a sentence of one year or longer may be imposed. Let's assume for a moment that we get the government's position about these issues about the CIMT. Let's talk for a moment about the underlying merits, if we get to that. Yes, Your Honor. The BIA took the position that he was ineligible for withholding of removal because he didn't show that the guerrillas persecuted him in the past for his political opinions as opposed to having joined the Army and that the guerrillas were unlikely to persecute him upon his return to El Salvador. Anything new to add to that other than what's in the briefs? No, Your Honor. Essentially his claim is that he was a military member and he was shot at by the opposing side, which would not be surprising. But that in itself doesn't make a claim for political asylum. And he hasn't established that he wasn't harmed because of anything outside of his military status. Can you, in connection with that issue, talk about the Del Carmen Molina case? I'm sorry, I'm not remembering that case. It's a case where the petitioner's family members joined the military to fight against guerrillas in El Salvador. And there was testimony by the petitioner that she would be killed just because of her political opinion. And the panel in that case found that the evidence was sufficient to show that she faced persecution on account of political opinion. So it's an imputed political opinion case specifically as to El Salvador, if I recall correctly. The petitioner's never claimed that the guerrillas imputed a political opinion to him. I'm familiar with all of the facts in the case that you're citing, but presumably that petitioner established more than just the fact that the family members had been in the military. But perhaps the petitioner showed that there was some overt statement made to guerrillas, that they joined the military for some specific reason, and that was because of political opinion. And here we don't have that at all. We just have the petitioner saying that he joined the military because it was either the guerrillas or the military, and I wanted to be in the military because the guerrillas were doing bad things. There's no evidence that he ever spoke with any guerrillas, that he ever said in a political opinion and told the guerrillas why he was joining the military, and that they persecuted him on account of that. And his father's murder is not enough of a – because he was in the military is not enough of an evidence of a political motivation? It's not, Your Honor. Just because someone has killed a family member because the person is in the military, that's not evidence of a political opinion. In a situation like El Salvador where it's the military and the guerrillas, aren't we really splitting hairs based on labeling? Isn't it inherently a political issue or no? Well, whenever you have a civil war, there's always going to be opposing political sides, but that in and of itself is not enough to establish you're a current military member because otherwise every military member around the world would have a valid basis for asylum. I'm in the military and I'm being shot at by the opposing side. There have been cases where people have established claims as former military members. He has never made that claim that if he goes back he'll be persecuted because he was a former member of the military. In fact, his persecution claim upon return is that he's afraid of gangs and he's since abandoned that claim. He doesn't make that claim before this court. He testified essentially that he's afraid of bad people. On pages 189 and 196 of the record, he doesn't even mention the guerrillas. He just says he's afraid of bad factions basically in El Salvador. Well, when the guerrillas killed his father, they did tell his mother that it was because of the fact that he joined the military and the military was fighting against them. So there is an inference to be made there, but you're saying that inference is insufficient to say that it's imputed political opinion versus just the mere status of his being a member of the military? That's correct. Yes, Your Honor. Just the fact that he was in the military is not in and of itself sufficient to establish that he was persecuted on account of either political opinion or imputed political opinion without more, and he hasn't established anything more than just the fact that he was in the military. So they have to use the magic word political and then back to the military. Well, they would have to, even if not using the word political, they would have to establish something that petitioner was persecuted or harmed because of something outside his mere military status, and he hasn't done that at all. And I couldn't tell you what those magic words might be because it doesn't occur in this case. What did we do with the case of Cruz Navarro? That, you may recall, was the one about the Peruvian, former member of the Peruvian police was persecuted by guerrillas. The panel rejected his argument there that the guerrillas had imputed pro-government, anti-communist political beliefs to him and concluded that he had failed to link the persecution to anything other than his status as a police officer. Our panel upheld the government in that case. Yes, Your Honor. We did not agree with the concept that a former police officer had imputed political opinion. Does that have any bearing on this case? Well, it just supports our position that he didn't show that as a current military member or even as a former military member that he would be persecuted. And, in fact, that the people he claims to fear upon his return do not even exist anymore. The guerrillas, there's no evidence that the guerrillas would harm him 28 years after he left the country or that they even exist. And, in fact, the only evidence he put in before the immigration judge was the 2009 Department of State report, and that doesn't even mention the guerrillas, much less state that they are harming people upon their return to El Salvador. I gather the government's position is that we never even really get to this because of the CIMT conviction, right? That's correct, Your Honor. He's not eligible for cancellation of removal, and he hasn't established that he's eligible for any other type of relief. He's failed to exhaust his asylum claim. He doesn't argue waiver in his brief, I'm sorry, withholding of removal in his brief, but to the extent that the court would address that issue, it should find that substantial evidence supports the agency's denial of that relief as well. Just to the extent that we've been thrown a bit of a curveball with this changed circumstance, apparently in the now misdemeanor conviction, in the event we entertain that, is that sufficient of a changed circumstance to justify a remand? We had a lot of discussion in the prior case just immediately before about a changed circumstance between the IJ and the BIA that would justify a remand. Is that different here? There wouldn't be a basis for remand. A remand would be futile in this case because, as I pointed out, that 1227 still requires a sentence of one year or longer, so no matter what actually happened in this case, and I would point out how many years after his conviction in 1995 have occurred, that's something that really doesn't matter in this case because of the 1227 bar to cancellation of removal. He's still ineligible, and this court has held that no matter what, they still have to establish that they don't have a CIMT that's punishable by one year or longer, no matter what the execution of the sentence was or was reduced to. So even if we credit 18.5 for this purpose, the statute on which he was convicted still says that he was eligible for incarceration for a year or longer, right? One year, two years, three years, yes, Your Honor. And so that's the only thing that matters, really, with respect to cancellation and removal under 1227A2. Despite the fact that it's now been reduced to misdemeanor? Yes, Your Honor. And that's, unfortunately for the petitioner, that's the way that the law is with cancellation and removal because he was eligible for a potential sentence, not what happened with the sentence after the fact. This is really out of left field, but I'll just ask it anyway, that we've had a recent change in the law with respect to crack cocaine versus regular cocaine, hugely different sentences there. Someone who had been convicted under the old crack cocaine laws, if you will, that wouldn't change anything for purposes of immigration if that were implicated, would it? No, it wouldn't. Are there no further questions? We would ask that the court deny the petition for review. Thank you. Thank you. Counsel, you have some rebuttal time. Yes, Your Honor. Thank you. Remember, you're on TV. I'm on TV. Yeah. So, Your Honor, just as to the question you asked before I sat down, he chose to join the Army rather than join the guerrillas who were the controlling faction in his town. He did this at great risk to himself and at great risk to his family, and, in fact, his father was killed by the guerrillas because he did this. Because your client did or because the father did? Because the petitioner. The father was also a member of the Army, right? That I'm not clear on, Your Honor. I thought, correct me if I'm wrong, I thought the father was killed because he was a member of the Army. Am I mistaken? Let me just check, but I don't believe that that's true. Well, it's not a major issue, but that's my understanding. What do we do with the case that I cited to counsel for the government, the Cruz-Navarro case? That's pretty close to this issue, is it not, in terms of the imputed political opinion? Well, Your Honor, he joined the Army in order to fight for his political beliefs against an opposing political idea. I know that's what you're saying now, but there's nothing I saw in the record where he said that was the case. Did I miss something? He said he joined the Army, no question. Yes. And he now says that that's part of a political belief. But as I said, in the Cruz-Navarro case, a former police person that was confronted by the Shining Path guerrillas said, they were coming after me because of my political beliefs. They thought I was pro-government, anti-communist, and so on. You should treat it that way. And our court said no. Right. What's the difference? Your Honor, I'm sorry, I think the only difference here, I'm running out of time, would be that they killed his father because of this, and that these people are still the same people, even though they're not called guerrillas, who control the area where his home is. That's 28 years ago. Yes, but politically speaking, that is still the same faction of people controlling the area. They're under government now, right? Yes, only now they're government officials. Okay. I think you're actually out of time. That's under a lot of time. We thank both counsel, unless either of my colleagues has other questions. We thank both counsel for their argument. It was very helpful. Appreciate it. And the case just argued is submitted. Thank you.
judges: M. Smith, Nguyen, Gordon